**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

HAROLD J. ROTH,

                              Plaintiff,

        v.

STATE OF ALASKA, DEPARTMENT OF
PUBLIC SAFETY and EDWIN
CARLSON, jointly and severally,

                              Defendants.

Case No. 5:15-cv-00001-SLG

## ORDER RE CERTIFICATION MOTION AND MOTION TO DISMISS

Before the Court at Docket 33 is Plaintiff Harold J. Roth's Renewed Request for
Judicial Review of State's Certification Decision, to which Defendants State of Alaska and
Alaska State Trooper Edwin Carlson (Defendants) filed a response at Docket 34. Also
before the Court is Defendants' Renewed Motion to Dismiss State Law Claims at Docket
28, to which Plaintiff responded at Docket 30. No reply was filed. Oral argument was not
requested, and was not necessary to the Court's determination of the motions.

### BACKGROUND

This case concerns Trooper Carlson's arrest of Mr. Roth for driving under the
influence. Mr. Roth seeks reversal of the Alaska Attorney General's decision to certify
that Trooper Carlson was acting within the scope of his employment at the time of the
incident.[1] Defendants' motion to dismiss presumes the certification is valid and seeks
dismissal of Mr. Roth's state law claims on immunity grounds.

---

[1] *See* Docket 10-1 (Certification).

Trooper Carlson arrested Mr. Roth on August 25, 2012 for operating a motor vehicle while under the influence in violation of AS 28.35.030.[2]  Mr. Roth alleges that Trooper Carlson "lacked probable cause to believe that [Mr. Roth] had committed the crime of operating a motor vehicle in violation of AS 28.35.030 or similar ordinance."[3]  Mr. Roth's Amended Complaint includes state law claims of false arrest, false imprisonment, battery, and malicious prosecution, as well as claims under 42 U.S.C § 1983 and for punitive damages.[4]

In his original Complaint, Mr. Roth asserted that "Defendant Carlson was at all times relevant to this complaint acting within the course and scope of his employment with the State of Alaska."[5]  In agreement, and pursuant to AS 09.50.253(c), the Alaska Attorney General certified that Trooper Carlson was acting within the scope of his employment at the time of the arrest.[6]  By operation of AS 09.50.253(c), certification substitutes the state as the party defendant, "subject to the same limitations and defenses applicable to an action or proceeding against the state."  Mr. Roth first challenged the certification in April 2015.[7]  In an order dated July 28, 2015, the Court denied that motion

---

[2] Docket 26 (Amended Complaint) at 2.

[3] Docket 26 (Amended Complaint) at 2.

[4] Mr. Roth originally filed this case in the Alaska state court in August 2014.  The original Complaint included a negligence claim against the State, but that claim and the State were dismissed from this case by the state court on November 25, 2014.  Docket 7-19 (Order Granting State's Motion to Dismiss).  Trooper Carlson removed this case to federal district court on January 15, 2015. Docket 1 (Notice of Removal).

[5] Docket 1-1 (Complaint) at 2.

[6] Docket 10-1 (Certification).

[7] See Docket 19 (Request for Review).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 2 of 17

because Mr. Roth was bound by the undisputed allegations in his Complaint.[8]  The Court also granted Defendants' Motion to Dismiss Remaining State Law Claims on immunity grounds pursuant to AS 09.50.253 and AS 09.50.250, which Mr. Roth had opposed only by requesting review of the certification.  However, the Court accorded to Mr. Roth an opportunity to file an amended complaint to allege that Trooper Carlson was acting outside the scope of his employment and again seek review of the certification decision.[9]

Mr. Roth filed an Amended Complaint on August 17, 2015 that alleged that Trooper Carlson was "acting outside the scope of his employment" at the time of the arrest.[10]  Mr. Roth then filed a renewed Request for Judicial Review of State's Certification Decision. He asserts that Trooper Carlson acted "outrageously, intentionally, with malice, with reckless indifference and, with deliberate indifference (actions which plaintiff argues take Trooper Carlson outside the course and scope of his employment . . . )."[11]  Defendants disagree.[12]  But the parties do not dispute the underlying facts of the incident, which was audio and video recorded.  The Court has reviewed the transcript of that recording.[13]  The undisputed facts in the record regarding the arrest are as follows:

Mr. Roth was initially stopped by U.S. Forest Service Officer Chris Sakraida for failing to stop at a stop sign several minutes before Trooper Carlson arrived at the scene.

---

[8] Docket 25 (Order) at 4.

[9] *Id.*

[10] Docket 26 (First Amended Complaint) at 2.

[11] Docket 33 (Request for Judicial Review) at 3.

[12] *See generally* Docket 34 (Opp.).

[13] Docket 19-2 (Transcript).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 3 of 17

When the Forest Service Officer asked Mr. Roth if he had anything to drink, Mr. Roth responded, "Sir, I need to be on my way." When asked why he needed to be on his way so fast, Mr. Roth responded, "Sir, I'm not answering any other questions." Several questions later Mr. Roth added, "I'd like to speak with an attorney." Officer Sakraida responded, "You're not in custody at all. So, you're – you're not under arrest in any way, shape or form right now."[14]

Trooper Carlson then arrived at the scene. He asked if Mr. Roth was on any medications, to which Mr. Roth gave no audible response. Trooper Carlson asked again, and Mr. Roth responded, "All right. I'm not going to answer any questions." Trooper Carlson asked again and Mr. Roth said he would not answer "any questions without first speaking with an attorney." Trooper Carlson then initiated a field sobriety test. But Mr. Roth asked, "Sir, am I required to do the field sobriety--" to which Trooper Carlson responded, "Yes, you do." Mr. Roth asked again, "I'm required to do the field sobriety test by law?" Trooper Carlson responded, "We need to know if you are under the influence of anything." Mr. Roth said, "Sir, I'm asking you. Am I required by law to do the field sobriety tests?" Trooper Carlson said, "Yes. Yes, you are."[15]

After several more similar exchanges, Trooper Carlson had Mr. Roth put his feet together and his hands at his sides, and asked him to focus on Trooper Carlson's fingertip. Then Trooper Carlson asked him to raise one foot and count for 30 seconds. When Mr. Roth had counted to 17, Officer Carlson asked Mr. Roth several times to look at his toes.

---

[14] Docket 19-2 (Transcript) at 2–3.

[15] Docket 19-2 at 3–4.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 4 of 17

Mr. Roth said he was looking at his toes, but Trooper Carlson said he was not. Mr. Roth did not stop counting at 30, but rather continued to 60. Trooper Carlson said, "Okay. Well, you did that incorrectly." Trooper Carlson then instructed Mr. Roth on how to perform a heel-to-toe walking test, which Mr. Roth failed to complete. Officer Sakraida and Trooper Carlson next administered a breathalyzer test, which was negative for alcohol. Mr. Roth asked if he was free to go. Trooper Carlson and Officer Sakraida both responded that he was not free to go. Trooper Carlson once again asked if Mr. Roth was under the influence of any illegal drugs, and Mr. Roth said again that he would not answer any questions until speaking with his attorney.[16]

Trooper Carlson then decided to "detain [Mr. Roth] and put him in cuffs." He told Mr. Roth he was being detained for DUI. Mr. Roth said, "I do not wish to be moved from the general vicinity." Trooper Carlson did not allow Mr. Roth to secure his vehicle or make a phone call. Mr. Roth said he did not consent to any searches. Trooper Carlson said, "That's okay. I'm going to still do it, for my safety." During the search, Trooper Carlson found a round canister and said, "That looks like something that's used for drugs."[17]

Trooper Carlson and Officer Sakraida then had a conversation about the incident. Officer Sakraida explained that Mr. Roth "[b]lew a stop sign" and that "[h]e had that look and he constantly had the whole time, refused to answer any questions without (indiscernible)." Trooper Carlson said, "Yep. Yep. (indiscernible) So here's—here's my game. So. I mean, I don't want to take your thunder. So, I—." Officer Sakraida

---

[16] Docket 19-2 at 5–11.

[17] Docket 19-2 at 11–13.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 5 of 17

responded, "No, no. I—I appreciate—." He said, "We don't—we don't deal with these." Trooper Carlson said that he had dealt with this and added, "Here in town. The DA doesn't (indiscernible). They—they dump them, for the most part. I actually got one and I got it through, and I got a conviction. (Indiscernible) we get him down to the hospital, they—they telephone a search warrant, they get blood and they move on. That's it. Screw them." He added, "And the guy is not being cooperative." Trooper Carlson said, "They tow him, you know. Just common sense. So, you want to—you want to play the game, we'll play the game. No big deal. Cost you a couple grand. So—." The two officers discussed who would take the arrest. Trooper Carlson said, "I don't care about the stats. They mean nothing to me. Just as long as tonight he goes to jail and the road's safe." Some parts of the ensuing conversation were indiscernible, but the Trooper Carlson said he thought the canister may have contained meth, and "he's doing something, dad or uncle or whatever is playing attorney. I don't give a shit. But, I mean, there's something—there's something." Trooper Carlson said, "I'll transport and I'll see if I can get a telephonic search warrant." Then he asked Officer Sakraida if there was anything else he observed. Officer Sakraida said, "No. It was—other than pretty much non-cooperative, refusal. That glazed over, you know, stare." The two officers discussed the contents of the canister, identifying it as a white powder that "could be meth."[18]

Trooper Carlson transported Mr. Roth to the Trooper post where Mr. Roth was allowed to call his attorney. This portion of the arrest was also recorded and the Court

---

[18] Docket 19-2 at 13–20.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 6 of 17

has reviewed the transcript of the recording.[19]  Trooper Carlson administered another breath alcohol test which disclosed no alcohol.  He informed Mr. Roth that his driver's license would be revoked in seven days, and that he was under arrest for driving while under the influence.  Trooper Carlson said "the officer is required by law to take all licenses in your possession."  He gave Mr. Roth a Notice and Order of Revocation/Disqualification and explained that it would be his temporary driver's license, and that it included information on how to apply for an administrative hearing.[20]  The Notice indicates that "[t]he officer is required by law to take all licenses in your possession."  Trooper Carlson checked a box indicating that Mr. Roth's license was revoked because his breath test disclosed an alcohol concentration of .08 or more, but also wrote in the same paragraph that Mr. Roth's breath alcohol concentration was ".000."[21]  Trooper Carlson indicated on the form that probable cause existed because of Mr. Roth's "manner of driving," swaying, and failure of the one leg stand and walk-and-turn tests.  Trooper Carlson then asked Mr. Roth to choose between several options for a chemical test of his intoxication.  Mr. Roth asked to speak with his attorney again, and was allowed to place another call.  After the call, Mr. Roth declined to have an independent chemical test.  Trooper Carlson explained that he had applied for and been

---

[19] Docket 19-3 (Transcript of Interview).

[20] Docket 22-6 (Notice).

[21] The Court notes that the form does not provide a separate box for troopers to check when they suspect someone operated a motor vehicle while intoxicated on something other than alcohol.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 7 of 17

granted a search warrant for Mr. Roth's blood, so they would be going to the hospital for two samples.[22]

Trooper Carlson's conversation with Judge William Carey applying for the search warrant was also recorded and the Court has reviewed the transcript of the recording.[23] Trooper Carlson explained that Officer Sakraida observed Mr. Roth with "what we call a 1,000-mile stare, which is stared straight ahead and would not respond to him verbally or make any indication of understanding the officer." He explained that Mr. Roth identified himself by giving Officer Sakraida his driver's license. Trooper Carlson told Judge Carey that when he "requested Mr. Roth complete the FSTs, or the field sobriety tests, to make sure that he was a safe driver. Mr. Roth continued to state that he refused to do anything, and then asked if he's required to complete the FSTs, or submit to the FSTs. I instructed him yes, he was, because he was operating a motor vehicle in the State of Alaska." Trooper Carlson then explained to Judge Carey that Mr. Roth did not follow the instructions on the field sobriety tests, but passed the breathalyzer test with no presence of alcohol. He explained that he found on Mr. Roth "a clear yellow container, a white powder was in this" and "[h]e was very odd, his behavior." Trooper Carlson added:

> He kept staring forwards. When we asked a question, if he had any medical issues or such as the prior questions for the FSTs, he would not answer any questions, stating that he wanted to talk to his attorney. Therefore, he was placed under arrest for driving while under the influence. And also, this—this is occurring at Ward Lake, which tonight there is a concert, which we have approximately about over 2,000 people that they're estimating it at.

---

[22] Docket 19-3 (Transcript) at 2–10.

[23] Docket 19-7 (Transcript).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 8 of 17

So there is heavy traffic in the area. There's children, adults, senior citizens as well.[24]

Judge Carey asked several questions regarding the container that Trooper Carlson found on Mr. Roth, its contents, and what Trooper Carlson's experience led him to believe about it. Trooper Carlson said, "It does look similar to methamphetamine." He added:

And just his behavior and his mannerisms with during contact, and lack of response and his 1,000 mile stare, and also according to the other officer had said that this individual, there's something that's wrong, or he is under the influence, and it just really gave us a strong indication that he—he's not under the influence of alcohol, but he is under the influence of some illegal substance.[25]

Judge Carey found "probable cause to believe that the taking of blood samples is likely to result in evidence of the crime of DUI" and authorized the warrant.[26] The toxicology lab did not detect any of the tested drugs in Mr. Roth's blood sample.[27]

## I.    Certification Decision

The Alaska Supreme Court established the rules for judicial review of the State's certification decision in *State, Dept. of Corrections v. Heisey*: (1) the standard of review is de novo; (2) the plaintiff must prove that the defendants were not acting within the scope of their employment; (3) the court should apply the factors of AS 09.50.253(h)(1) for the scope-of-employment determination; (4) the outcome should be decided by the court, not

---

[24] Docket 19-7 at 2–6.

[25] Docket 19-7 at 6–7.

[26] Docket 19-7 at 7–9.

[27] Docket 19-6 (Toxicology Report).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 9 of 17

a jury; and (5) the determination should be made prior to trial.[28]  Also, an evidentiary

hearing is not necessary if no disputed issues of material fact exist.[29]

> AS 09.50.253(h)(1) provides that:
>
> "acting within the scope of the employee's office or employment" means acts or omissions
>
> (A) that the state employee is employed or authorized to perform;
>
> (B) of the state employee that occur substantially within the authorized time and space limit;
>
> (C) that are activated by a purpose to serve the state; and
>
> (D) that do not constitute acting, or failing to act, with willful, reckless, or intentional misconduct, or with gross negligence or malice[.]

Under Alaska law, law enforcement officers do not necessarily act outside the

scope of employment even when they commit torts or misunderstand the law in carrying

out their duties.  For example, in *Prentzel v. State, Dept. of Public Safety*, the Alaska

Supreme Court held that Alaska State Troopers were acting within the scope of their

---

[28] 271 P.3d 1082, 1090–91 (Alaska 2012).

[29] *Heisey*, 271 P.3d at 1091.  In *Heisey*, an inmate at the Anchorage Correctional Complex alleged that while he was in restraints and being escorted along a corridor, two officers either performed a "take down" and slammed him to the floor or negligently caused him to fall, causing serious injury and disfigurement.  *Id.* at 1084.  The Attorney General certified that the officers acted within the scope of their employment.  *Id.*  The superior court ruled that the certification decision was not subject to judicial review and dismissed the inmate's state law tort claims, but permitted the inmate to amend his complaint to add state constitutional claims.  *Id.* at 1085.  The State petitioned the Alaska Supreme Court for review of the superior court's legal conclusions. *Id.*  The inmate's response asked the Court to consider additional issues, and the Court requested briefing on the question of whether the certification decision is subject to judicial review.  The Court held that the certification decision is subject to judicial review and remanded the case for further proceedings.  The Court noted that the superior court had done no fact-finding, and instructed that on remand, "[i]f there are disputed issues of fact, we direct the court to hold an evidentiary hearing and make factual findings, then decide the certification question prior to trial.  If no disputed issues of material fact exist, the court may resolve the issue on summary judgment."  *Id.* at 1091.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 10 of 17

authority (as related to their eligibility for qualified immunity) after they made a warrantless arrest of someone they believed had violated the conditions of release imposed in a DWI charge.[30]   In fact, warrantless arrests were not authorized for violations of DWI release conditions, and the plaintiff was not even subject to conditions of release when arrested. But the Court held that "[o]nce tortious acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available.  Thus, the defense would apply only to conduct for which it would not be needed.  In other words, if immunity only applied to the troopers' conduct when they correctly interpreted the law of arrest, the immunity defense would never be needed."[31]   Also, allegations of factors such as malice must be accompanied by objective evidence capable of supporting the inference.[32] Accordingly, to succeed in reversing the certification decision, Mr. Roth must prove that Trooper Carlson did something more invidious than misunderstanding or misapplying the law.

Mr. Roth has not raised any allegations that challenge Trooper Carlson's actions that would fall under AS 09.50.253(h)(1)(A)–(C).   Rather, only AS 09.50.253(h)(1)(D) seems at issue here.  Also, Mr. Roth's renewed request for judicial review references his

---

[30] 169 P.3d 573 (Alaska 2007) (*Prentzel* does not cite AS 09.50.253).

[31] *Prentzel*, 169 P.3d at 584 (citing *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 154 (Alaska 1987)).

[32] *Prentzel*, 169 P.3d at 585 ("before malice can become a disputed question of fact, the record must contain at least some objective evidence establishing facts capable of supporting an inference of malice").

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 11 of 17

earlier filings rather than repeating the bases for his request.  In the first request, Mr. Roth raised five assertions to support reversing the certification.[33]

First, Mr. Roth asserts that Trooper Carlson "recklessly (or intentionally) and improperly advised Mr. Roth that Mr. Roth was required by law to submit to the standardized field sobriety tests.  There is no such law."[34]  This assertion does not support Mr. Roth's request because, even if Mr. Roth is correct that Trooper Carlson misstated or misapplied the law, *Prentzel* indicates that troopers may do that without acting outside the scope of their employment.  It is also not reckless or intentional misconduct, because to be reckless or intentional Trooper Carlson would need to have made a conscious choice to misstate the law.[35]  Trooper Carlson obviously believed the tests are required under the circumstances he encountered because he repeated the same interpretation to Judge Carey and testified in his affidavit that he "honestly believed that motorists were required to participate in [standardized field sobriety tests]."[36]  It is also not clear that Alaska law provides Mr. Roth a right to refuse field sobriety tests if Trooper Carlson had a "reasonable suspicion" that Mr. Roth was driving while intoxicated.[37]  Mr. Roth's failure to stop at the stop sign and his unusual responses to questions "under the totality of the

---

[33] Docket 19 (First Request for Judicial Review).

[34] Docket 19 at 13.

[35] *See Hayes v. Xerox Corp.*, 718 P.2d 929, 935 (Alaska 1986) (reckless misconduct requires a conscious choice of a course of action).

[36] Docket 22-3 (Carlson Aff.) at 4.

[37] *See McCormick v. Municipality of Anchorage*, 999 P.2d 155, 160–61 (Alaska Ct. App. 2000) (most courts hold no constitutional right to refuse non-testimonial field sobriety tests supported by an officer's "reasonable suspicion").

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 12 of 17

circumstances known to the officer and in light of the officer's experience" support Trooper Carlson's reasonable suspicion that Mr. Roth was driving while intoxicated.[38] Accordingly, Trooper Carlson did not act outside the scope of his employment when he administered field sobriety tests.

Next Mr. Roth asserts that Trooper Carlson recklessly or intentionally misled Judge Carey. This conclusory assertion is without merit. The Court finds Trooper Carlson's representations of the incident to Judge Carey to be substantially accurate, and to lack any evidence of willful, reckless, or intentional misconduct, gross negligence, or malice.[39]

Mr. Roth's third assertion implies that Trooper Carlson arrested Mr. Roth only to force him to incur substantial inconvenience and expense. The only evidence he offers in support of the assertion is the portion of the conversation between Trooper Carlson and Officer Sakraida in which Trooper Carlson said, "So, you want to—you want to play the game, we'll play the game. No big deal. Cost you a couple grand."[40] But Trooper Carlson and Officer Sakraida also discussed a need to "keep the roads safe" and Trooper Carlson told Judge Carey that he was particularly concerned in part because of the concert traffic that evening. This does not indicate willful, reckless, or intentional misconduct, gross negligence, or malice.

---

[38] *See State v. Miller*, 207 P.3d 541, 544 (Alaska 2009); *State v. Moran*, 667 P.2d 734, 735–36 (Alaska Ct. App. 1983) (discussing the "reasonable suspicion" test).

[39] Also, absolute immunity would apply to Trooper Carlson's testimony before Judge Carey. *See generally Aspen*, 739 P.2d 150 (Alaska 1987).

[40] *See* Docket 19 at 15–16.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 13 of 17

Mr. Roth asserts that Trooper Carlson intentionally and maliciously confiscated Mr. Roth's driver's license without authority to do so. Trooper Carlson maintains that the "[t]he statutes that require law enforcement officers to initiate administrative license revocations are confusing" but that the standardized paperwork completed by Trooper Carlson "is routine for DUI arrests."[41] While Trooper Carlson has not explained the inconsistency between checking a box that indicates license revocation because of breath alcohol concentration above .08 and a notation of .000 breath alcohol concentration, the Court is not persuaded that this act exhibited willful, reckless, or intentional misconduct, gross negligence, or malice, particularly given the limited options on the form. Trooper Carlson seems to have checked the only box applicable to driving while intoxicated, and then completed the rest of the Notice and Order of Revocation so as to accurately reflect the overall incident. And the Notice clearly provides a procedure for Mr. Roth to challenge the revocation. Even if Trooper Carlson should not have initiated the revocation, nothing in the record indicates he acted with willful, reckless, or intentional misconduct, or with gross negligence or malice toward Mr. Roth, and this assertion does not justify reversing the certification decision.[42]

Finally, Mr. Roth asserts that during the interview and blood draw he did not exhibit signs of intoxication, yet "Trooper Carlson intentionally and maliciously continued in his pursuit of Mr. Roth culminating in the filing of the complaint charging him with driving

---

[41] Docket 22 at 20.

[42] Malice is the intent, without justification or excuse, to commit a wrongful act; reckless disregard of the law or of a person's legal rights; or ill will or wickedness of heart. *Black's Law Dictionary* (10th ed. 2014). *See also Brandner v. Bateman*, 349 P.3d 1068, 1075 & n.26 (Alaska 2015) (using this definition of malice where the term is not defined by statute).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 14 of 17

under the influence."[43]  Trooper Carlson responds that he believed Mr. Roth was under the influence of some illegal substance, and that "[e]ven if Carlson's belief was incorrect, Carlson's conduct did not rise to the level of gross negligence, recklessness, or malice to establish that Carlson was acting outside the scope of his employment."[44]  The Court agrees.  Reviewing the entire record de novo, the Court finds that Trooper Carlson had had an honest, if mistaken, belief that Mr. Roth operated his vehicle under the influence of some illegal substance.  The circumstances support that belief.  And Mr. Roth has not asserted any evidence that Trooper Carlson's actions, including any of the alleged mistakes he may have made that evening, constituted acting with willful, reckless, or intentional misconduct, or with gross negligence or malice.  Therefore, Mr. Roth's request that the Court reverse the certification decision will be denied.  As a result, the State of Alaska is substituted as defendant for all state law claims pursuant to AS 09.50.253.

## II.    Motion to Dismiss

Defendants' base their Renewed Motion to Dismiss State Law Claims on Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) permits a party to seek dismissal of an action for failure to state a claim for which relief can be granted.  This court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal*.[45]  Under that standard, to survive a Rule 12(b)(6) motion to dismiss "a complaint

---

[43] Docket 19 at 16–17.

[44] Docket 22 at 20.

[45] 556 U.S. 662 (2009).

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 15 of 17

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[46]

Defendants' motion to dismiss the state law claims is based on Defendants' assertion that the State is immune from all such claims.[47] Mr. Roth seems to concede this point, as his opposition to the motion to dismiss only raises a renewed request for judicial review of the certification decision.[48] AS 09.50.250(3) provides that an action against the state may not be brought if the state claims "arise[] out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract right." And AS 09.50.280 precludes an award of punitive damages against the State. These two statutes encompass all of Mr. Roth's claims except those raised under § 1983.[49] In Mr. Roth's opposition to Defendants' first motion to dismiss, Mr. Roth "essentially agrees AS 09.50.253 and AS 09.50.250 combine to dictate plaintiff's ability to recover from Defendant Carlson with respect to the asserted state law claims . . . ."[50] Mr. Roth's subsequent filings have not supplemented his argument on this point. Having found the Attorney General's certification valid, the Court will dismiss the state law claims as to the State of Alaska.

---

[46] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[47] *See* Docket 28 (Motion).

[48] Docket 30 (Opp.).

[49] "A § 1983 claim 'on its face admits of no immunities,' and the state could not have certified the officers against such a claim." *Heisey*, 271 P.3d 1082, 1096 (Alaska 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

[50] Docket 16 (Opp.) at 1.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 16 of 17

In light of the foregoing, IT IS ORDERED that Plaintiff Harold J. Roth's Renewed Request for Judicial Review of State's Certification Decision at Docket 33 is GRANTED insofar as the Court has reviewed the certification decision and found it valid and DENIED as to Mr. Roth's request for an order reversing the State's Certification Decision and Mr. Roth's request that the Court deny Defendants' Renewed Motion to Dismiss. Defendants' Renewed Motion to Dismiss at Docket 28 is GRANTED. All of the state law claims are dismissed: Count I (False Arrest); Count II (False Imprisonment); Count III (Battery); Count IV (Malicious Prosecution); and Count V (Punitive Damages) as to the state law claims. This action will proceed solely on the § 1983 claim against Trooper Edwin Carlson (Count VI) and associated punitive damages (Count V).[51]

The Clerk of Court shall amend the case caption accordingly to delete Defendant State of Alaska, Department of Public Safety.

DATED at Anchorage, Alaska this 16th day of February, 2016.

*/s/ Sharon L. Gleason*
United States District Judge

---

[51] Defendants' December 21, 2015 Motion for Summary Judgment pending at Docket 38 and Mr. Roth's February 2, 2016 Response at Docket 42 will be addressed by separate order.

Case No. 5:15-cv-00001-SLG, *Roth v. State, et al.*
Order Re Certification and Motion to Dismiss
Page 17 of 17