# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

HAROLD J. ROTH,

        Plaintiff,

v.

EDWIN CARLSON,

        Defendant.

Case No. 5:15-cv-00001-SLG

## ORDER RE SUMMARY JUDGMENT

Before the Court at Docket 38 is Defendant Edwin Carlson's Motion for Summary Judgment, supported by Trooper Carlson's Memorandum and exhibits at Docket 39 and filed on December 21, 2015. Plaintiff Harold J. Roth responded at Docket 42 on February 1, 2016, and Trooper Carlson replied at Docket 45 on February 16, 2016. Oral argument was not requested and was not necessary to the Court's determination of the motion.

## BACKGROUND

The Court has recently recounted the background facts of this case, which will not be repeated here.[1] In an order dated February 16, 2016, the Court ruled that the Alaska Attorney General's certification that Trooper Carlson acted within the course and scope of his employment was valid, granted Defendants' Motion to Dismiss the state law claims, and dismissed the State of Alaska as a defendant. The Court found no basis to conclude that Trooper Carlson acted with willful, reckless, or intentional misconduct, or with gross negligence or malice. Only Plaintiff's 42 U.S.C § 1983 claim against Trooper Carlson

---

[1] *See* Docket 43 (Order re Certification Motion and Motion to Dismiss).

remains (Count VI), together with any associated punitive damages (Count V).[2] For the reasons set forth herein, the Court will grant summary judgment to Defendant Carlson on that claim.

I.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[3] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[4] The non-moving party may not rely on mere allegations or denials.[5] He must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[6]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[7] To reach the level of a genuine dispute, the evidence must

---

[2] *See* Docket 23 (Amended Complaint) at 4–5.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[5] *Id.* at 248-49.

[6] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[7] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

be such "that a reasonable jury could return a verdict for the non-moving party."[8] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[9] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[10]

The Ninth Circuit has held that summary judgment on qualified immunity is appropriate when "the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts."[11]

## II. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[12] The purpose of qualified immunity is to "balance[] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[13]

---

[8] *Id.* at 248.

[9] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[10] *Anderson*, 477 U.S. at 249.

[11] *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979–80 (9th Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004)).

[12] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[13] *Pearson*, 555 U.S. at 231.

Government officials are not entitled to qualified immunity on summary judgment if (1) the facts taken in the light most favorable to the plaintiff show that the officials' conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[14] Both prongs of the analysis must be satisfied, so that if a court determines that one prong is not met, qualified immunity applies. A court may consider either prong first.[15]

For a constitutional right to be clearly established, its contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[16] Courts should not define clearly established law at a high level of generality; otherwise, qualified immunity becomes no immunity at all if the only prerequisite is a constitutional violation.[17] Put simply, "qualified immunity gives government officials

---

[14] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from by Pearson*, 555 U.S. at 232–36. The Court notes that recent Supreme Court cases seem to merge these two prongs, and it may be that the law on qualified immunity is evolving. *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*, 555 U.S. at 231, but omitting the two-prong configuration). However, the Ninth Circuit thus far applies the two-prong approach. *See Garcia v. Cty. of Riverside*, --- F.3d ----, No. 13-56857, 2016 WL 424707, at *2 (9th Cir. Feb. 3, 2016). In any event, the outcome of this case is the same regardless of how the qualified immunity test is stated.

[15] *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[16] *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks removed).

[17] *Id.* at 2084.

breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[18]

## III. Discussion

This is a case in which the material, historical facts are not in dispute. Rather, the only dispute involves what inferences properly may be drawn from those historical facts. The parties do not dispute that Mr. Roth was pulled over for failing to stop at a stop sign, was arrested for driving under the influence after mixed field sobriety test results, but subsequent breath and blood tests did not detect any of the tested-for intoxicating substances and the DUI case against Mr. Roth was dismissed.[19] Mr. Roth draws the inference from these facts that this amounts to a constitutional violation.[20] Trooper Carlson asserts that he made objectively reasonable decisions regarding Mr. Roth's arrest so he is entitled to qualified immunity from Mr. Roth's lawsuit.[21] Summary judgment to the Defendant is warranted unless a reasonable jury could conclude that Trooper Carlson violated a clearly established constitutional right—specifically, the right to not be arrested for driving under the influence, to not have a blood sample drawn, and to not be detained under the circumstances Trooper Carlson and Mr. Roth encountered on the evening of the arrest.

---

[18] *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *al-Kidd*, 131 S. Ct. at 2085 (internal quotation marks omitted).

[19] *See* Docket 19-8 (Amended Notice of Dismissal).

[20] *See* Docket 26 (Amended Complaint) at 5; Docket 42 (Opp.).

[21] *See generally* Docket 39 (Motion).

Mr. Roth's response to Trooper Carlson's summary judgment motion focuses on probable cause. Mr. Roth asserts that because the sobriety tests Trooper Carlson administered did not conclusively establish that Mr. Roth was intoxicated, Trooper Carlson lacked probable cause to arrest him. Therefore, Mr. Roth maintains that his Fourth Amendment right to be free from unreasonable search and seizure was violated.[22] Mr. Roth cites several Alaska state cases that addressed the adequacy of the factual basis to establish probable cause to arrest for driving while intoxicated.[23] Mr. Roth asserts that he did not exhibit most of the cited indicia when he was arrested, so "Trooper Carlson lacked probable cause to arrest Mr. Roth and could not have had any reasonable belief that he did have probable cause to arrest Mr. Roth."[24] Mr. Roth then asserts that this lack of probable cause infected Trooper Carlson's post-arrest conduct including his application for a search warrant to draw a sample of Mr. Roth's blood, his decision to obtain the blood sample, and his decision to detain Mr. Roth. Mr. Roth maintains that "Trooper Carlson could and has articulated a selective set of circumstances . . . that could form the requisite probable cause to arrest" but "those circumstances certainly dissipated over the ensuing time while the interaction between Mr. Roth and Trooper Carlson continued without any further indicia of anything."[25] Mr. Roth concludes that "[f]rom the within and foregoing,

---

[22] Docket 42 (Opp.) at 2.

[23] Docket 42 at 2–4.

[24] Docket 42 at 10.

[25] Docket 42 at 18–19.

Trooper Carlson's Motion for Summary Judgment based upon qualified immunity should be denied."[26]

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"[27] And the Fourth Amendment test for probable cause provides that "[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime."[28] This standard allows room for mistakes of fact and law, provided the mistakes are reasonable.[29] "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'"[30]

The Court has already found that "Mr. Roth's failure to stop at the stop sign and his unusual responses to questions 'under the totality of the circumstances known to the officer and in light of the officer's experience' support Trooper Carlson's reasonable suspicion that Mr. Roth was driving while intoxicated."[31] Mr. Roth then failed to

---

[26] Docket 42 at 19–20.

[27] *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (quoting *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)).

[28] *Peng*, 335 F.3d at 976 (quoting *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999)).

[29] *See Heien*, 135 S. Ct. at 536.

[30] *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

[31] Docket 43 at 12–13 (citing *State v. Miller*, 207 P.3d 541, 544 (Alaska 2009); *State v. Moran*,

successfully complete all of the field sobriety tests, a circumstance that, together with Mr. Roth's "1,000-mile stare" and unusual demeanor, warranted a reasonable belief that Mr. Roth had operated his vehicle under the influence of a controlled substance sufficient to support probable cause to arrest.[32]  The fact that Mr. Roth's breath tests and later his blood test did not reveal the presence of an intoxicant and that Mr. Roth was not convicted of driving while intoxicated are not material to the reasonableness of Trooper Carlson's actions.[33]  Under these circumstances, Mr. Roth has not established that Trooper Carlson lacked probable cause to arrest him in violation of his constitutional rights and so he cannot defeat Trooper Carlson's assertion that qualified immunity applies.[34]

---

667 P.2d 734, 735–36 (Alaska Ct. App. 1983) (discussing the "reasonable suspicion" test)).

[32] *See Garibay v. State, Dept. of Admin., Div. of Motor Vehicles*, 341 P.3d 446, 450 n.22 (Alaska 2014) ("Probable cause to arrest exists if the facts and circumstances known to the officer would warrant a prudent person in believing that the defendant had committed an offense.").  This standard does not require the indicia of alcohol consumption cited by Mr. Roth, such as alcohol odor, slurred speech, etc., which is logical because AS 28.35.030 prohibits driving under the influence of other controlled substances.

[33] *See Heien*, 135 S. Ct. at 536–37 (reasonable mistakes of fact and law do not defeat probable cause); *Prentzel v. State, Dept. of Public Safety*, 169 P.3d 573, 589 & n.61 (Alaska 2007) ("If an officer had probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

[34] Mr. Roth also asserts that Trooper Carlson lacked probable cause to obtain a search warrant for Mr. Roth's blood.  Docket 42 at 10.  But "[w]hen an arrest is made, it is reasonable for the arresting officer to search that person in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."  *Riley*, 134 S. Ct. at 2483 (citing *Chimel v. California*, 395 U.S. 752, 762–63 (1969)).  During Trooper Carlson's search of Mr. Roth incident to arrest he found a small canister of white powder in Mr. Roth's pocket.  Docket 19-2 at 13.  Under this totality of circumstances, a prudent person would reasonably conclude that there was a fair probability that Mr. Roth operated his vehicle under the influence of whatever was in the canister, probably some intoxicant that only a blood test could detect.  And in any event, Trooper Carlson would be entitled to absolute immunity from a civil suit regarding his testimony before Judge Carey.  *See Briscoe v. LaHue*, 460 U.S. 325, 341–46 (1983).

But even if Trooper Carlson had acted unreasonably and lacked probable cause to arrest Mr. Roth, thereby violating the Fourth Amendment, Mr. Roth has not demonstrated that his right to be free from arrest by Trooper Carlson was clearly established, so Trooper Carlson would still be entitled to qualified immunity. Mr. Roth did not address this issue in his response to the motion for summary judgment, so he has not pointed to any existing precedent that places the constitutional question in this case (essentially, whether a DUI arrest for "bizarre behavior" with inconclusive field sobriety test results violates the Fourth Amendment) to be clearly established.[35] Given the vast array of non-alcohol intoxicants, and their wide variety of effects that can differ from the effects of alcohol, the Court finds that reasonable officers would not have understood that arresting Mr. Roth would violate his Fourth Amendment rights, in light of Mr. Roth's uneven performance on the field sobriety tests combined with his unusual mannerisms.[36] Put simply, Mr. Roth has not shown that Trooper Carlson acted in violation of a clearly established right in making the arrest. Rather, the Court has already found that Trooper Carlson did not knowingly violate the law.[37] And there is no indication that Trooper

---

[35] *See* Docket 39-5 (Carlson Affidavit) at 3–4 ("Given the negative breath test and Roth's bizarre behavior, I contacted dispatch to see if there was a drug recognition expert (DRE) available. After learning that a DRE was not available, I was forced to make a judgment call about Roth's condition based on the information I had available at that time. Based on my training, experience, and Roth's peculiar behavior, including his mannerisms, lack of response, his '1,000-mile stare', his failure to follow directions during the SFSTs, I believed that Roth was under the influence of some intoxicating substance. I discussed this with Officer Sakraida, and he concurred. I decided to take Roth into custody.").

[36] *See* Docket 39-6 (Alaska State Troopers Drug Identification manual).

[37] Docket 43 (Order) at 12–15.

Carlson's actions were plainly incompetent.  Because there was no violation of a clearly established statutory or constitutional right of which every reasonable official would have known, Trooper Carlson is entitled to qualified immunity and the motion for summary judgment will be granted.[38]

In light of the foregoing, IT IS ORDERED that Defendant Edwin Carlson's Motion for Summary Judgment at Docket 38 is GRANTED.  This action is DISMISSED with prejudice; the trial and all associated deadlines and proceedings are VACATED and any pending motions are DENIED as moot.

The Clerk of Court is directed to enter a judgment accordingly.

DATED at Anchorage, Alaska this 29th day of February, 2016.

/s/ Sharon L. Gleason
United States District Judge

---

[38] *See Mullenix*, 136 S. Ct. at 308.